DENNIS R. INGOLS, ESQ., CSB#236458
LAW OFFICE OF DENNIS R. INGOLS
111 North Market Street, Suite #300
San José, California 95113
T: 408-601-0126
dennis@ingolslaw.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMMANUEL WYATT and MAKEDA WYATT, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF STANISLAUS, DIANA TORRES, ARACELI FIGUEROA, SOCIAL WORKER JONES, DENISE AGUILAR, JULIE BARTLETT, CLAUDIA LLAMAS, and DOES 1-10, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (43 U.S.C. § §1983), MONELL** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs, EMMANUEL WYATT and MAKEDA WYATT, ("Plaintiffs"), respectfully represent and allege as follows:

## I. JURISDICTION & VENUE

1.     Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. §§1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights secured to Plaintiffs under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, under federal law, and California law where applicable as stated herein.

1

2.      This Court has jurisdiction over all causes of action asserted herein because all causes of action arise out of conduct undertaken by Defendants in the State of California, County of STANISLAUS.

3.      Venue properly lies in the U.S. District Court for the Eastern District of California in that the events and circumstances herein alleged occurred in the County of STANISLAUS, and at least one Defendant resides in the County of STANISLAUS.

## II. PARTIES

**PLAINTIFFS**

4.      Plaintiffs, EMMANUEL WYATT ("EMMANUEL") and MAKEDA WYATT ("MAKEDA"), ("Plaintiffs" and/or "Parents") were at all times relevant to the facts and circumstances herein an individual residing in the County of STANISLAUS.

5.      Plaintiffs were the primary family unit of minor children, KTW, LNW, JEW, YW, ZW, NW, and SW (hereinafter "the children").  When referred to herein, they may be addressed as Father and Mother, Plaintiffs, or Parents.

6.      The minors are not parties to this action at this time.

7.      Prior to the involvement of the "Stanislaus County Community Services Agency / Child and Family Services" (hereinafter "CPS") and the individual Defendants named herein in the lives of the Plaintiffs, Plaintiffs and the children lived together, and they enjoyed all of the love, mutual affection, and support of a parent – child relationship, as a family unit.

8.      The minor children's names will be replaced with the aforementioned monikers in these pleadings in order to protect the children's privacy. Plaintiffs intend to use these designations unless and until such time the Court orders otherwise.

9.      At all times relevant herein, prior to the removal of the children from Plaintiffs' care by Defendants, Plaintiffs raised, nurtured, provided guidance, and cared for the children.

10.     At all times prior to the wrongful removal and continued detention of the children by Defendants, Plaintiffs enjoyed the company, companionship, and society of the children, and

2

all other benefits and burdens of their rights of familial association with the children, and the children with them.

**DEFENDANT COUNTY OF STANISLAUS**

**Stanislaus County CPS**

11.  Defendant COUNTY OF STANISLAUS ("COUNTY") is a municipality in corporate form, organized and existing under the laws of the State of California.

12.  DIANA TORRES, ("TORRES"), whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, employed by COUNTY.

13.  ARACELI FIGUEROA, ("FIGUEROA"), whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, employed by COUNTY.

14.  Social Worker JONES, first name unknown, ("JONES"), whose acts as alleged herein were performed in JONES' individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker and/or social worker supervisor, employed by COUNTY.

15.  DENISE AGUILAR, ("AGUILAR"), whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, employed by COUNTY.

16.  JULIE BARTLETT, ("BARTLETT"), whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, and a supervisor of social workers, employed by COUNTY.

17.   Social worker supervisor CLAUDIA LLAMAS, ("LLAMAS"), whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, and a supervisor of social workers, employed by COUNTY.

18.   "Stanislaus County Community Services Agency / Child and Family Services" (hereinafter "CPS") is a COUNTY governmental agency organized and existing pursuant to the law and policies of Defendant COUNTY, which together with COUNTY, promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual Defendants, TORRES, FIGUEROA, JONES, AGUILAR, BARTLETT, LLAMAS, and Does 1 – 5, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or procedures, and/or failure to train, whether or not promulgated in written form, encouraged, or allowed to persist by Defendant COUNTY. COUNTY condoned, ratified, and ignored without remediation the conduct of the social worker Defendants pursuant to said policies, practices, customs,

and procedures, as complained of herein.

19.   As the employer of social workers and their supervisors, COUNTY and/or CPS had primary responsibility for the training, education, and supervision of social workers, emergency response workers, dependency intake workers, placement workers, and all other CPS personnel, and CPS supervisors.

**MONELL CLAIMS**

20.   COUNTY has in its employment various social workers and supervisors, such as the named individual Defendants herein above, who by virtue of their employment are state actors within the meaning of that term in the context of civil rights legislation embodied in 42 U.S.C. §1983.

21.   COUNTY has a policy, custom, or practice, of including false allegations, inflating and exaggerating partially true allegations, and omitting facts and circumstances exculpatory to allegations, in the Welfare & Institutions       Code 300 Petitions and reports filed by social

4

workers, and always with social worker supervisor approval, seeking to remove and take custody of children, or separate them from one parent or the other. In this case, such policy, custom or practice occurred in the filing of the W&IC 300 Petition and the reports that followed. This occurred in the juvenile case against EMMANUEL and MAKEDA as set forth hereinbelow, and thus this policy, led to the violation of the children's rights against unlawful seizure under the 1st and/or 4th Amendment, and the parents' rights of familial association under the 1st and/or 14th Amendment, described hereinbelow.

22.    COUNTY promulgated, encouraged, and/or permitted, the policies, patterns, and practices described below under and as the moving force of which the individual defendants, and DOES  1– 5, committed the acts or omissions complained of herein, and COUNTY condoned, ratified, and encouraged the conduct of the COUNTY employee-defendants as complained of herein, and also failed to train or inadequately trained the COUNTY employees and the herein named COUNTY employee-defendants in a manner exhibiting deliberate indifference to causing recurring violation of parent(s) and children(s) constitutional rights of familial association.

23.    As the employer of social workers, social work supervisors, and the assistant director named herein above, COUNTY had primary responsibility for the training, education, and supervision of its employees, and PLAINTIFFS are informed and believe and thereon allege that it was COUNTY which promulgated, encouraged, administered, and/or permitted, the policies, practices, customs, and procedures under which, and as the moving force of which, the individual defendant employees of COUNTY committed the acts or omissions and constitutional violations complained of herein.

24.    As specified in the Fifth Claim for Relief below, PLAINTIFFS contend and allege the COUNTY is vicariously liable for each of the actions complained of in each of the Claims for

Complaint
WYATT, et al., v. County of STANISLAUS, et al.
Case No.

Relief below wherein the individually-named COUNTY employee Defendants are alleged to have violated federal laws and/or constitutional rights of Plaintiffs; such liability inuring to COUNTY by virtue of the law set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny, and by virtue of the fact that the violations complained of herein occurred because of COUNTY policies, practices or customs, and possibly as well the non-existent or inadequate training provided to COUNTY social workers and supervisors, such that these affirmative actions and/or omissions to take appropriate actions were the moving force behind the violations of the PLAINTIFFS' constitutional rights.

25.    PLAINTIFFS allege that the COUNTY has policies, practices, and/or customs which contain the following features in their modus operandi, features that are constitutionally-violative of parents' and children's rights on their face and yet perpetuated and pursued with deliberate indifference to the rights and safety of PLAINTIFFS herein, and families such as PLAINTIFFS' family within Stanislaus County.

26.    Such policies, practices, and customs include but are not limited to those that follow:

A)    A policy, practice, or custom authorizing and or ratifying without discipline, threat of discipline, or reprimand of social workers and/or their supervisors, the repeated removal of children from their parents or guardians without a warrant, consent, or imminent risk of serious bodily injury to [a] child[ren], taking [a] child[ren] when there is sufficient time to obtain a warrant and there are less intrusive means of protecting the child[ren] from whatever the social workers perceived imminent risk of serious bodily injury to the child[ren] might be, and for which the result of said policy has been thousands of lawless removals of child[ren] from parents and/or the separation of children from parents in Stanislaus County over the past several years violating both the parents and child[ren]'s constitutional rights of

6

procedural and substantive due process under the U.S. Constitution and the amendments thereto.

This policy, practice, or custom, has been the moving force behind the removals in the following families known to Plaintiffs, all within the past three (3) years, unless otherwise noted:

  i) Warrantless removal of children from Angelina Nunes and Emanuel Alves (July 2016);

  ii) Warrantless removal of children from Leah & Serena Ford;

  iii) Warrantless removal of child from Jeremy Westfall and Taylor Webb;

  iv) Warrantless removal of child from Leann Santor;

  v) Warrantless removal of child from Shane Beard;

  vi) Warrantless removal of children from Hilda Perez;

  vii) Warrantless removal of children from Emmanuel and Makeda Wyatt (PLAINTIFFS herein).

B) the COUNTY has a policy and/or unwritten practice or custom of threatening parents/guardians to enter into what COUNTY calls "Safety Plans," wherein in the parent(s) are threatened their child/children will be removed and placed in foster care if they will not agree to terms the COUNTY social worker(s) demand, which can include but are not limited to such onerous and constitutionally violative conditions / terms as:

  i) Separating the parent(s) from their child[ren] by placing them with someone else;

  ii) Separating a parent from their spouse or significant other;

7

iii) Dictating a parent shall have no contact whatsoever with the child[ren]'s other parent, a family relative, any COUNTY CSA or CFS employee declare to be "suspected" perpetrator(s) of abuse/neglect as to the child[ren];

iv) Filing in the Superior Court unsworn and sworn documents containing false and misleading claims against the other parent, or others, with state juvenile dependency courts in order to comply with COUNTY demands effecting violations of rights of familial association, one or all of which terms and conditions the parent(s) are told by COUNTY through its social workers if not agreed to, will result in the removal of the parent(s) child[ren] from their care, custody, and control, and the child[ren] are in fact removed unlawfully repeatedly by COUNTY when they refuse to "cooperate" and/or enthusiastically agree with anything CSA social workers want or demand of the parents.

C) the COUNTY has a policy and/or unwritten practice or custom of removing all children from parents whenever they remove a single child ("take one, take all") or force a "Safety Plan" upon the family, and specifically practice or have a custom of "take one, take all."

D) the COUNTY has a policy and/or unwritten practice or custom of manipulating the reports written by court ordered therapists and evaluators with the COUNTY contracted providers of numerous "services" that are foisted upon parents by COUNTY in the course of juvenile dependency proceedings, an entity known as "Sierra Vista Child & Family Services." These reports are then submitted to the Superior Court in juvenile dependency matters, and the social workers do not

8

inform the Court or the other parties of their interference in the "independent" judgment of the mental health professionals involved, from whom the decisions about the extent and duration of any counseling or therapy are dictated by the non-professional, non-licensed (in most all cases) social workers.

27.    PLAINTIFFS allege the COUNTY has no training and/or at best constitutionally inadequate training with regard to all of the following areas of law and issues that arise routinely in the context of any child abuse and/or neglect investigation on a daily basis in the County of Stanislaus, as follows:

A)    the scope, nature, and importance of the 4th and 14th Amendment based rights protecting familial association, including but not limited to:

i)    The procedural due process right to have notice and the opportunity to be heard by a neutral and detached judicial officer before the removal of a child from a parent's care in the absence of narrowly circumscribed exceptions to that requirement based on circumstances constituting learned in the investigation of abuse/neglect of an imminent risk of serious bodily injury;

ii)    The constitutional rights and liberty interests of a parent to care for his/her child(ren) without unreasonable government interference, and the reciprocal rights of a child(ren) to same;

iii)    The existence and relevance of federal laws and precedent on the removal of children from their parents / guardians in the context of an investigation of a child abuse or neglect referral;

iv)    The prohibition under federal law for including false statements, misrepresentations of evidence, and omitting exculpatory information that may be clarifying or mitigating to one or more allegations or statements of fact

9

submitted to the court for purposes of furthering removal and/or continued detention of children, and continued juvenile court proceedings, within a document filed with the Superior Court, some of which are filed under penalty of perjury.

B) the nature and extent of the physical, emotional, and psychological harm that removal of children causes parents and the children, including but not limited to,

    i)   The permanent and untreatable emotional and physiological damage to children and life-long sequalae of emotional and psychological instability of children separated from their parent(s);

    ii)  The nature of the aforementioned damage as being physically measurable in regards to physical changes in children's developing brains as seen in the impairment of neurons and neurological receptor conductivity in the brain, and diminished growth of both grey and white matter in their brain,

    iii) The importance of the parent-child bond that is disrupted by removal and/or separation from parent(s), to the long term behavioral, emotional, and psychological function of [a/the] child[ren] passing through infancy, youth, adolescence and adult hood, and inclusive but not limited to the effect of the child[ren]'s ability to form lasting emotional bonds with friends, family, lovers and spouses, in addition to the panoply of individuals encountered in a lifetime such as teachers, and coaches, pastors, and mentors, for whom children damaged in the way complained of above, cannot learn and grow and achieve their highest and best human achievement because they cannot achieve any semblance of an intimate emotional bond with those individuals, and,

iv) The depths of depression, despair, anxiety, anger, and grief visited upon parents of child[ren] removed by COUNTY and the long-term effects of that experience on their ability to function emotionally and psychologically, to trust government authority, and to feel safe and secure in their homes and families.

28.    Further conduct of this nature, lying and withholding of exculpatory or explanatory information – by all Defendants, is alleged hereinbelow. All of this policy, practice or custom, or inadequate training caused conduct was a moving force behind continuing violations of the family's 1st, 4th and/or 14th Amendment rights.

29.    The issue of COUNTY CPS social workers lying, falsifying, and withholding exculpatory information from information they provide to the juvenile court, to the family members and their counsel, exists across all manner of reports or information obtained by CPS social workers, and conveyed – or not conveyed - to the juvenile dependency court, this include but is not limited to submitted Detention Reports, Jurisdiction Reports, Addendum Reports, Last Minute Reports, Disposition Reports, and basically any report of any kind made to the juvenile dependency court by CPS.

30.    The failure to take steps to stop this manner of constitutionally violative conduct is an additional lawful reason supporting *Monell* liability against the COUNTY.

31.    COUNTY has a policy, custom, or practice of failing to adequately train and/or failed to train social worker employees on emotional and psychological abuse by parents and other providers caring for minor children.

32.    This failure to train or inadequate training leads to the repeated failure to engage professionals capable of dealing with the dynamics of said situations, when the social workers themselves are so inadequately equipped to properly or timely resolve such situations in the interests of the children or the family as a whole, and this is another of the moving forces behind the continuing violations of 1st, 14th and/or 4th Amendment rights of parents and children just as it was for Plaintiffs herein.

11

33. Such *Monell* liability also exists based on the fact that COUNTY has failed to train at all and/or failed to train employees adequately on state and federal laws, statutes, and/or regulations implicated in the context of a child abuse/neglect investigation, and this is a moving force behind the violation of the 1st, 4th and/or 14th Amendments of the Plaintiffs herein, as detailed in this Complaint.

34. For these policies, procedures, practices/customs, and inadequate or non-existent training, Plaintiffs do hereby seek to hold COUNTY responsible in whole or in part for the conduct of the individual Defendant-employees of COUNTY herein named, as well as their failures to act.

35. Plaintiffs hereby sue all agencies and departmental units of COUNTY specified hereinabove under the designation of COUNTY herein, and/or interchangeably with CPS.

**JUVENILE DEPENDENCY PETITIONS**

36. A juvenile dependency Petition is a document sworn to under penalty of perjury, and contains elements of various grounds for alleging child abuse or neglect, all pursuant to W&IC Section 300.

37. In juvenile dependency cases within COUNTY, there exists a unit/department of workers who prepare Petitions to commence juvenile dependency cases.

38. The worker of the Petition unit has absolutely no personal knowledge of any of the claims alleged in a Petition.

39. The Petition unit worker is not required to do any investigation of any kind into the claims the Petition unit worker then includes in a Petition.

40. The Petition unit worker is not required to even contact the investigating social worker who performed the investigation that led to the filing of a Petition or application for a Warrant to remove a child.

41. The Petition is usually signed under oath *despite* zero personal knowledge about the facts or circumstances alleged in the Petition by the signing Petition unit worker.

42. The Petition is then subjected to a *prima facie* standard at the initial Detention Hearing

in juvenile court, whereby all the allegations are deemed true, the juvenile court can, and usually will, on that *prima-facie* standard then order children to continue separated from one or both parents, living in foster care, with non-relative extended family members, or with relatives.

43.    The COUNTY (CPS) trains, and the social workers know, that the juvenile court is required to take their reports, such as the Initial Detention Hearing Reports, Addendum Reports, Last Minute Reports, and Jurisdiction/Disposition Reports, into evidence when making decisions of any and all nature that arise in juvenile dependency proceedings, and that knowledge is abused by the repeated use of false statements – even completely fabricated evidence, misrepresentations, and a favored route of deception and manipulation of the single most important legal proceedings parents and children may ever find themselves involved in, the repeated omission of facts or evidence known to the social worker, which if known to the Juvenile Court would materially change the outcome of the Juvenile Court's decisions, invariably impacting them favorably for the reunification of parent and child, and negatively as to the relief sought by the COUNTY.

## III.  <u>FACTUAL ALLEGATIONS</u>

**General Allegations**

44.    In short, DEFENDANTS removed seven young children from their parents, PLAINTIFFS, without a warrant, consent, or exigent circumstances, in violation of PLAINTIFFS' rights, based on concerns about a dirty home and the children's hygiene.

45.    Plaintiffs allege, on information and belief, that all named DEFENDANTS, including Does 1-10, integrally participated in the decision to remove the child, without a warrant or consent, and in the absence of exigent circumstances or an imminent risk of serious bodily injury to any of the children.

Complaint
WYATT, et al., v. County of STANISLAUS, et al.
Case No.

46.   None of the DEFENDANTS, individually or collectively, made any effort to avoid removing the children, nor to discuss any alternatives to removing the children, or to in any way minimize the scope of the intrusion upon the Plaintiffs' constitutional rights.

47.   No DEFENDANT discussed placement of any of the children with friends or family members, or removing fewer than all of the children, nor any other alternatives, such as separation from *one* of the PLAINTIFFS, or staying in a motel or shelter temporarily while the PLAINTIFFS cleaned the home (which in fact, PLAINTIFFS told DEFENDANTS they could do in a matter of hours).

48.   The children were detained, away from their parents, PLAINTIFFS, from April 8, 2019, until May 22, 2019.

49.   Neither the COUNTY-employed social workers, nor the Modesto Police Department officers involved herein (Does 6-10) made efforts to obtain a warrant to remove the children, or to even investigate whether the children were at any risk of harm. They had no signs of injury, claimed no injury, other than their chronic medical issues.

50.   In unlawfully removing the children without a warrant from the care of his father and mother when they were not in imminent risk of serious bodily injury, nor in need of medical care, or otherwise in a condition requiring immediate protection or attention by medical or mental health professionals, and in the use of the threats and intimidation against the Plaintiffs, Defendants violated both federal and state law, and did so in a punitive and malicious fashion with reckless disregard for the rights of all claimants, violating their rights of familial association and freedom of association, procedural and substantive due process and causing them severe and irreparable damage.

51.   Upon the removal of the children, DEFENDANTS then prepared and had filed a Petition, pursuant to California Welfare and Institutions Code §300, with the Juvenile Court

14

alleging multiple counts of abuse and/or neglect of the children, against EMMANUEL and MAKEDA.

52.    While in the care, custody, and control of the COUNTY, the children received medical treatments, inoculations, medications, assessments and evaluations, and Plaintiffs were not informed in advance nor given the opportunity to respond to proposals or intentions to have said medical goods or services administered to the child, in complete violation of the Plaintiffs' and the child's rights of familial association, and in violation of the child's rights for his parents' involvement in such decisions and personal attendance at medical procedures and evaluations.

53.    PLAINTIFFS are informed and believe, and on that basis allege, that at least four of the children were examined by doctors who ruled that there were no signs of abuse or neglect of the children. DEFENDANTS declined to return the children at that point.

**March 28, 2019 Referral**

54.    There was a referral related to one of the children "defecating in his pants." It was investigated and "substantiated." It was noted that the concern had been brought to PLAINTIFFS' attention more than once. DEFENDANTS did not remove the children.

55.    On or about March 28, 2019, COUNTY received a referral that one of the children, JW, smelled of feces. TORRES "received the referral as she investigated a prior referral dated February 28, 2019 reporting physical abuse; during that time, [EMMANUEL] did not allow Social Worker [TORRES] to enter the home." DEFENDANTS did not remove the children.

**April 1, 2019**

56.    Four days later, on April 1, 2019, TORRES received information regarding the parents' income. The referral was "substantiated." DEFENDANTS did not remove the children.

57.    On April 1, 2019, a referral was made because KW had dirty underwear. The referral

15

was "substantiated." DEFENDANTS did not remove the children.

**April 5, 2019**

58.     On April 5, 2019, TORRES spoke with KW, and tried but could not reach LW and JW at school regarding the referrals. PLAINTIFFS declined to speak to TORRES about the pending referrals. DEFENDANTS did not remove the children.

**April 8, 2019 Entry and Removal**

59.     On April 8, 2019, COUNTY social workers TORRES and FIGUEROA entered the PLAINTIFFS' home, pursuant to a search warrant.

60.     The search warrant was not a warrant to seize or remove the children, nor to place them into "protective custody."

61.     Any reasonable government official would have known that it was not a warrant to seize or remove the children, nor to place them into "protective custody." In fact, any literate person of any vocation or profession would have known.

62.     DEFENDANTS knew it was not a removal, seizure, or "protective custody" warrant.

63.     That same day, Defendants removed all seven children. Also present were unidentified members of Modesto Police Department, who are sued herein as Does 6-10.

64.     In *Rogers v. San Joaquin*, 487 F.3d 1288 (9th Cir.2007), defendants received a report of child neglect.  The defendants in *Rogers* had information, either from the referral or from their own investigation that:

> [the family] "home was dirty and maggot-infested, and that there were unsecured guns in the home…[had] piles of dirty dishes and an overflowing garbage receptacle in the kitchen, as well as piles of dirty clothing scattered about…the children had dirty bedding and mattresses without frames… [one child's bedroom had] clothing [defendant] believed was dirty scattered on the floor…[in the other child's room the defendant] "observed a brown substance that she believed to be feces smeared on the wall and a substance that she thought was rat droppings on the floor…[another defendant] "observed what he though was vomit in the bottom drawer of a night stand…" *Rogers*, at 1291-1293.

16

There were five guns in the Rogerses' bedroom, four of which were unloaded and stored in the closet, and one of which was loaded and kept in the dresser next to the Rogerses' bed. Thomas testified that ammunition for the guns remained in the closet in a childproof container.  Nicole testified that the gun in the dresser had a trigger lock with a key, and the key was located in a jewelry box mounted on the wall.

65.    Here, DEFENDANTS described the home:

[A]ppeared dirty and filthy as there was black mold on the walls, and a strong smell of human feces. There were feces on the floor, dirty clothes and dirty diapers on the floor in the hallway, and the kitchen was full of rotten food and cockroaches. The bathroom to the left of the hallway was not in service and there were piles of feces and dirty underwear. The children's room was full of dirty clothes. The parents' bedroom had bottles of alcohol on the floor, rotten food, dirty clothes and trash. Social Worker Figueroa observed a rifle.

66.    DEFENDANTS further stated in submissions to the juvenile court that some of the children smelled like feces.

67.    Generally, the mess was exaggerated, overstated. There was no "rotten food."

68.    PLAINTIFFS explained, among other things, that some of the children had chronic medical issues, and/or were diaper-age, and used colostomy bags or diapers.

69.    PLAINTIFFS deny there was any unordinary smell, given the colostomy bags and diapers.

70.    There was no black mold. PLAINTIFFS lived in a rented apartment in a fairly large complex. Had there been any mold, it would have been reported and remedied by the ownership.

71.    There were no "piles of feces."

72.    The description of the hallway is false.

73.    The description of the kitchen was false.

74.    The bathroom was in service.

75.    PLAINTIFFS' bedroom was a bit messy, but not as described by DEFENDANTS.

76.    DEFENDANTS, in the Petition, Detention Report, Jurisdiction Report, and elsewhere, describe PLAINTIFFS' history of CPS referrals, all seemingly related to the smell of feces,

17

or the children's hygiene. In other words, it was a chronic issue. The history of referrals indicated as much. The history of referrals also indicated a prior willingness the leave the children in the home.

77.    DEFENDANTS lied, misrepresented, omitted material information, and otherwise intentionally mislead the juvenile court regarding the rifle. DEFENDANTS, in the Petition, described the rifle in its own separate allegation as "not properly secured and openly accessible to the children."

78.    In reality, the rifle had a trigger lock in place, was unloaded, and the key and ammunition were stored elsewhere in the home. None of this information was reported to the juvenile court.

79.    DEFENDANTS, including but not limited to TORRES and FIGUEROA, in consultation with JONES, BARTLETT, AGUILAR, LLAMAS and DOES 1-10, removed the children from PLAINTIFFS.

80.    There was no warrant for the removal of the children. There was no warrant for the seizure of the children. There was no "protective custody" warrant.

81.    There were no exigent circumstances justifying the lack of a warrant to remove the children.

82.    There was no consent for the removal of the children.

83.    In fact, DEFENDANTS noted that EMMANUEL was angry about the removal, which they later tried to use to deceive the juvenile court, attempting to portray EMMANUEL's anger as a reason *for* the removal, rather than a *reaction to it*.

84.    At no time did any DEFENDANT attempt to acquire a warrant to *remove* the children.

85.    At no time did any DEFENDANT ask any other DEFENDANT about obtaining a removal/seizure warrant, the need for a removal warrant, or anything related to a warrant to remove the children.

**April 9, 2019 Staffing**

86.    Defendants held an "TAP Staffing Meeting" regarding PLAINTIFFS' family on April

18

9, 2019.

**April 10, 2019, Detention Report filed**

87.    On April 10, 2019, the Petition and Detention Report were signed and filed. They were signed by AGUILAR and BARTLETT.

**April 11, 2019, Detention Hearing**

88.    On April 11, 2019, the Juvenile Court held the first hearing, a "Detention Hearing." A Detention Hearing is similar to an arraignment where charges are read (or reading is waived), and pleas are entered. A prima facie standard applies – if the Petition sounds bad, the kids remain in custody and a Jurisdiction Hearing is scheduled. The truth or falsity of the allegations is irrelevant; Often times, if a parent disputes the allegations, the judge will explain as much.

89.    At the Detention Hearing, attorneys were appointed for all parties.

90.    Defendants know, based on their training, how much the juvenile court relies upon CPS, and Defendants, in making its decisions. Defendants know of the court's reliance, and knowingly, willfully abuse it on a daily basis. They did it here.

91.    Defendants made no efforts to avoid removing the children, nor to limit the scope of the intrusion.

92.    Defendants in fact claimed that their "Reasonable Efforts" to avoid removal (**on April 8th**) included a "TAP Staffing Meeting" that they conducted on **April 9th**; they did NOT inform the juvenile court that the "TAP Staffing Meeting" took place *after* the removal.

93.    Elsewhere in the Detention Report, they noted that EMMANUEL was "angry" that his children were being removed.

**May 17, 2019 Jurisdiction Hearing and Jurisdiction Report**

94.    The Jurisdiction Hearing in juvenile court is where evidence and argument are presented and the juvenile court decides whether the allegations in the operative Petition are true. In practice, the first "Jurisdiction Hearing" date is usually for receipt of report and trial setting.

Complaint
WYATT, et al., v. County of STANISLAUS, et al.
Case No.

95.    The Jurisdiction Report was signed on May 17, 2019, by AGUILAR and BARTLETT, and filed on or about that date.

96.    The Jurisdiction Report largely repeated the same lies, misrepresentations, and omitted the same exculpatory and/or explanatory information in a deliberate attempt by DEFENDANTS to deceive the juvenile court into "taking jurisdiction" or finding the allegations in the Petition to be true.

**May 22, 2019, Jurisdiction Hearing, Return of the children**

97.    On May 22, 2019, the juvenile court held the Jurisdiction Hearing. The juvenile court ordered the children be returned to PLAINTIFFS, but that the case would remain open, and DEFENDANTS's oversight would continue.

98.    The same children that used colostomy bags and/or diapers prior to the removal continued to use colostomy bags after they were returned. They still use them today.

## DAMAGES

99.    As a result of the conduct of Defendants, Plaintiffs suffered severe emotional distress, anxiety and damage to their psyche, to such an extent as to cause physical manifestations of pain and symptoms of nausea and severe depression, including but not limited to sleeplessness, headaches, fatigue, malaise, irritability, inability to focus, loss of appetite, and loss of weight. Plaintiffs developed an abiding fear and distrust of authority figures and particularly social workers.

100.    The incident of the removal also caused humiliation and embarrassment and loss of reputation in the community to Plaintiffs EMMANUEL and MAKEDA, caused the incursion of medical fees, therapy fees, attorney's fees, and expenses related thereto, and is likely to cause the incursion of further medical, therapy, and/or counseling fees in the future as well as expenses related thereto.

101.    Plaintiffs seek an award of exemplary / punitive damages pursuant to any state or federal laws authorizing the award of punitive damages, to make an example of and punish the individual Defendants, and in the hope of deterring future conduct of a similar nature.

## V.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Violation of 14th Amendment – Removal
[Plaintiffs v. Torres, Figueroa, Jones, Aguilar, Bartlett, Llamas, and Does 1 – 10]

270.   Plaintiffs re-allege and incorporate paragraphs 1 through 98, inclusive, as though fully set forth at this point, as they relate to a claim for relief against TORRES, FIGUEROA, JONES, AGUILAR, BARTLETT, LLAMAS, and Does 1 – 10 for violations of Plaintiffs' 14th Amendment rights to familial association. Such rights were violated by the removal of the children on April 8, 2019 from PLAINTIFFS' care, custody, and control. While the rights of minors, as it concerns removal, arise under the 4th Amendment, parents maintain an identical right under the 14th Amendment.

271.   The removal of the children was undertaken without consent, probable cause, a warrant, or exigent circumstances justifying such removal from Plaintiffs. Defendants failed to conduct an adequate investigation and ignored exculpatory evidence presented to them by Plaintiffs and other collateral contacts.

272.   Plaintiffs re-allege and incorporate paragraphs 99-100 as said damages relate to a claim for relief for a violation of Plaintiffs' constitutional right to familial association, violated by removal of THE CHILDREN

273.   The punitive damage allegations of paragraph 101 apply in this claim for relief to Defendants for the violation of Plaintiffs' rights as stated.

//

//

**SECOND CLAIM FOR RELIEF**

14th Amendment Violation (Substantive) – Continuing Detention - Fraud

[Plaintiffs v. Torres, Figueroa, Jones, Aguilar, Bartlett, Llamas, and Does 1 – 5]

274.  Plaintiffs re-allege and incorporate paragraphs 1 through 98, inclusive, as though fully set forth at this point, as they relate to a claim for relief against TORRES, FIGUEROA, JONES, AGUILAR, BARTLETT, LLAMAS, and Does 1 – 5 for a violation of Plaintiffs' familial association rights under the 14th Amendment to the United States Constitution, with regard to the continued separation of the Plaintiffs from his child after the initial warrantless removal of THE CHILDREN from the care, custody, and control of Plaintiffs on April 8, 2019, as such separation was accomplished through the use of fraud, misrepresentation, and omission of material facts and evidence in the Petition filed under oath to commence the juvenile matter, and the reports written and submitted at that time, and thereafter.

275.  The juvenile court relied on the false statements and misrepresentation of facts, and the numerous omitted material facts in the Petition and Detention Report filed with the Court, and in the reports written and submitted to juvenile court thereafter by Defendants such as TORRES, FIGUEROA, JONES, AGUILAR, BARTLETT, LLAMAS, and Does 1 – 5, to continue the separation of the children from PLAINTIFFS.

276.  The falsehoods, misrepresentations, and omissions when included/excluded in a juvenile dependency Petition sworn under oath, were known to the social workers to be deemed "true" by the juvenile dependency court for purposes of considering removal of a child[ren] at a detention hearing under California law, and they did so act upon that knowledge in the deceitful manipulative manner and actions previously described in detail.

22

277.   The social worker Defendants were also aware that the only next opportunity to contest the falsehoods and omissions would be at least one month after the original detention hearing (first hearing after removal of children) and at the jurisdiction hearing.

278.   This Claim for Relief is for the substantive due process violation of the Plaintiffs' rights, for invading the family's rights of familial association pursuant to the 14th Amendment, the Defendants' actions constituting reckless disregard and deliberate indifference to the family members rights, safety, and welfare, accomplishing the continued separation of the family members through the use of fraud, misrepresentations and omissions of material facts in juvenile dependency proceedings.

279.   Plaintiffs alleges this Claim for Relief includes in its ambit the two separate but related contentions of Plaintiffs, which are,

  • The use of fraudulent statements and misrepresentations, and omissions of exculpatory evidence and information in the juvenile proceeding at all, constitutes a claim for a 14th Amendment substantive due process violation of the Plaintiffs rights of familial association, separate and apart from any other Claim for Relief,

  • The use of fraudulent statements and misrepresentations, and omissions of exculpatory evidence and information in the juvenile proceeding to accomplish and/or continue the separation of the children from PLAINTIFFS, is in and of itself an additional and separate claim constituting a separately cognizable 14th Amendment substantive due process violation.

280.   Plaintiffs re-allege and incorporate paragraphs 99-100 as said damages relate to a claim for relief for a violation of the Plaintiffs' constitutional substantive due process right to be free from a continuing violation of their fundamental liberty interests in the love, care, and companionship of each other, their familial relations rights.

23

281.  The punitive damage allegations of paragraph 101 apply in this claim for relief to Defendants for the violation of Plaintiffs' rights as stated.

## THIRD CLAIM FOR RELIEF

[Plaintiffs v. County on All Prior Claims for Relief]

282.  Plaintiffs re-allege and incorporate each and every paragraph in this Complaint as if fully set forth herein.

283.  The unconstitutional actions/omissions of Defendants TORRES, FIGUEROA, JONES, AGUILAR, BARTLETT, LLAMAS, and Does 1 – 5 resulted from the customs, practices, and/or procedures alleged hereinabove, which actions and failures to act were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant Stanislaus County.

284.  Defendant County failed to properly train, instruct, monitor, supervise, and discipline TORRES, FIGUEROA, JONES, AGUILAR, BARTLETT, LLAMAS, and Does 1 – 5, evidencing deliberate indifference to Plaintiffs' constitutional rights and other citizens of Stanislaus County, which rights were thereby violated as described above.

285.  The unconstitutional actions and/or omissions of Defendants were known, and were ordered, approved, tolerated and/or ratified by policymaking officers for Defendant County.

286.  The aforementioned customs, policies, practices, and procedures, as well as the failures to properly and adequately train, instruct, monitor, supervise and discipline of Defendants County were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly-established and well-settled constitutional rights in violation of 42 USC § §1983, as more fully set forth above.

287.  As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendant County, as described above, Plaintiffs

24

sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth in paragraphs 99-100, above.

## JURY DEMAND

Plaintiffs demand a jury trial as to all issues so triable.

**PRAYER FOR RELIEF**,

WHEREFORE, Plaintiffs respectfully request that this Court:

1.) Award Plaintiffs, special and compensatory damages in an amount to be proven at trial, but in no event less than $1,000,000.00.

2.) Award Plaintiffs punitive damages against individual Defendants, and each of them, for their extreme and outrageous conduct in complete disregard for the rights of the Plaintiffs;

3.) Award Plaintiffs statutory damages and/or attorney's fees against all Defendants as allowed by 42 U.S.C. §1988.

4.) Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: March 18, 2021          By:     The Law Office of Dennis R. Ingols

                                            /S/ DENNIS R. INGOLS
                                        Attorney for Plaintiffs

25