UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL WYATT, et al., | No. 1:21-cv-00455-DAD-JDP |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | (Doc. No. 65) |
| COUNTY OF STANISLAUS, et al., | |
| Defendants. | |

This matter is before the court on the motion for partial summary judgment filed on behalf of plaintiffs on July 18, 2024. (Doc. No. 65.) The pending motion was taken under submission pursuant to Local Rule 230(g). (Doc. No. 72.) For the reasons explained below, plaintiffs' motion for partial summary judgment in their favor will be denied.

**BACKGROUND**

**A.     Factual Background[1]**

Plaintiffs are Emmanuel and Makeda Wyatt ("plaintiff Emmanuel" and "plaintiff Makeda," respectively), the parents of seven minors. (PUF ¶ 1.) Defendants are County of

/////

---

[1] The relevant facts that follow are undisputed unless otherwise noted and are derived from the undisputed facts as stated by plaintiffs and responded to by defendants (Doc. No. 73-1 ("PUF")), as well as the documents filed in support of plaintiffs' motion (Doc. Nos. 65-2, 65-3, 68).

1

1  Stanislaus, Diana Torres, Araceli Figueroa, Jones, Denise Aguilar, Julie Bartlett, and Claudia
2  Llamas.  (Doc. No. 1 at 1.)
3      On February 28, 2019, defendant and social worker Torres went to the children's school.
4  (PUF ¶ 6.)  Two of the children reported being hit or "whooped" by their father, plaintiff
5  Emmanuel.  (*Id.*; Doc. No. 68 at 14.)
6      On April 8, 2019, defendants and social workers Torres and Figueroa entered plaintiffs'
7  home pursuant to a search warrant.  (PUF at ¶ 29.)  Defendant Torres described the home as dirty
8  and filthy including feces, dirty clothes, black mold, dirty diapers, rotten food, cockroaches, a
9  bathroom out of service, bottles of alcohol on the floor of the parents' room, trash, and a rifle
10 inside the closet.  (PUF ¶ 30.)  Defendant Torres informed plaintiffs that they needed to call
11 relatives to come pick up the children.  (Doc. No. 68 at 19.)  Plaintiff Emmanuel became
12 aggressive and started punching walls.[2]  (*Id.*)  Defendant Torres stated that she "didn't feel like it
13 was safe for [her] to stay there longer[.]"  (Doc. No. 65-3 at 103.)  Then the decision was made to
14 remove the children.  (*Id.* at 102–03.)  The children were removed without a warrant authorizing
15 their removal.  (PUF ¶ 33.)
16     According to deposition testimony from defendant Llamas, it might have taken four to six
17 hours to get a warrant to remove the children, depending on the availability of the judge.  (Doc.
18 No. 65-3 at 141.)  According to deposition testimony from defendant Torres, it took a couple of
19 hours to obtain the warrant to search plaintiffs' home.  (*Id.* at 81.)
20 /////

---

[2] Plaintiffs suggest in their pending motion that this occurred, if at all, *after* the decision to remove the children from the home without a warrant was made and communicated to plaintiffs. (Doc. No. 65-1 at 9) ("EMMANUEL became frustrated by the removal and (allegedly, disputedly) punched a wall."). Defendant Torres testified in her deposition that plaintiff Emmanuel became aggravated and started punching walls when plaintiffs were trying to arrange for the kids to stay with other family. (Doc. No. 65-3 at 102–03.) According to defendant Torres, only after plaintiff Emmanuel became aggressive and started punching walls was the decision made to remove the children from the home. (*Id.* at 103.) The remaining evidence before the court confirms defendant Torres's account. (Doc. No. 68 at 19.) Plaintiffs cite no countervailing evidence. (PUF ¶ 36.) Therefore, on the limited record before the court, it is undisputed that plaintiff Emmanuel became aggressive and started punching walls before the decision was made to remove plaintiffs' children from the home.

**B.     Procedural Background**

On March 18, 2021, plaintiffs filed their operative complaint in which they assert the following claims:  (1) violation of plaintiffs' procedural due process Fourteenth Amendment rights brought against the individual defendants; (2) violation of plaintiffs' substantive due process Fourteenth Amendment rights brought against the individual defendants; and (3) a *Monell* claim against defendant County of Stanislaus.  (Doc. No. 1.)

On July 18, 2024, plaintiffs filed the pending motion for partial summary judgment in their favor as to their first claim and concurrently filed a request to seal documents.  (Doc. Nos. 65, 66.)  On July 23, 2024, the previously-assigned district judge granted plaintiffs' request to seal.  (Doc. Nos. 67, 68.)  On July 23, 2024, the case was reassigned to the undersigned.  (Doc. No. 70.)  On August 1, 2024, defendants filed their opposition to plaintiffs' motion.  (Doc. No. 73.)  On September 11, 2024, plaintiffs notified the court of their intent not to file a reply.  (Doc. No. 76 at 1–2.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  If the moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

2007).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

## ANALYSIS

"Parents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer,* 202 F.3d 1126, 1136 (9th Cir. 2000). "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001). "Officials violate this right if they remove a child from the home absent information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (citation omitted). "Officials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." *Id.* (citation omitted). "The existence of reasonable cause, and the related questions, are all questions of fact to be determined by the jury." *Wallis*, 202 F.3d at 1138. The plaintiff bears the burden of proving the constitutional violation, including the burden of proving that there was no reasonable cause to believe that the child was in imminent danger of serious bodily injury. *Mueller v. Auker*, 700 F.3d 1180, 1193 (9th Cir. 2012) ("Next, the Muellers contend that the jury

1  instructions erroneously put the burden on them to show an absence of imminent danger.
2  However, in a claim brought under 42 U.S.C. § 1983 'the plaintiff carries the ultimate burden of
3  establishing each element of his or her claim.'") (citation omitted); *Williams v. Cnty. of Monterey*,
4  No. 19-cv-01811-BLF, 2021 WL 1966712, at *5 (N.D. Cal. May 17, 2021) ("In opposition,
5  Plaintiffs dispute that they bear the burden to prove lack of exigent circumstances, asserting 'that
6  is the "taker" burden.' . . . Plaintiffs are incorrect regarding the burden of proof on exigency at
7  trial. In a civil action under § 1983, the plaintiffs at all times bear the ultimate burden of proving
8  to the jury that their constitutional rights were violated.").

9  "Serious allegations of abuse that have been investigated and corroborated usually give
10 rise to a reasonable inference of imminent danger sufficient to justify taking children into
11 temporary custody if they might again be beaten or molested during the time it would take to get
12 a warrant." *Rogers*, 487 F.3d at 1294–95 (citation omitted). "However, an official's prior
13 willingness to leave the children in their home militates against a finding of exigency, as does
14 information that the abuse occurs only on certain dates or at certain times of day." *Id.* at 1295
15 (citation omitted).

16 Moreover, in order to assess a defendant's claim of qualified immunity, the court conducts
17 a two-part analysis: "1) Was the law governing the official's conduct clearly established? 2)
18 Under that law, could a reasonable official have believed the conduct was lawful?" *Id.* at 1297
19 (citation omitted, cleaned up). Pursuant to clearly established law, "a child could not be removed
20 from the home without prior judicial authorization absent evidence of imminent danger of serious
21 bodily injury and unless the scope of the intrusion is reasonably necessary to avert that specific
22 injury." *Id.* (citation omitted, cleaned up). Therefore, granting plaintiffs' motion for partial
23 summary judgment in their favor would require a finding, on the basis of undisputed facts before
24 the court, that "a reasonable social worker would have understood that the children faced no
25 imminent risk of serious bodily harm[.]" *Id.*

26 In their motion, plaintiffs argue that the result in this case is dictated by the Ninth Circuit's
27 decision in *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir. 2007). In *Rogers*, the
28 appellate court reversed the district court's grant of summary judgment in favor of the individual

1 defendant social worker and reversed the district court's denial of partial summary judgment in
2 favor of the family plaintiffs. *Id.* at 1291. The Ninth Circuit determined that the defendant social
3 worker's warrantless removal of the children violated the family plaintiffs' constitutional rights to
4 familial association, and qualified immunity did not apply. *Id.* at 1296–97. *Rogers* featured
5 similar purported justifications for removing the children as those in this case, including the
6 presence of feces, dirty clothing, dirty dishes, overflowing garbage, and unsecured guns in the
7 home. *Id.* at 1292–93. In addition, *Rogers* involved medical ailments such as bottle rot, children
8 locked in their rooms, and multiple circular bruises on the children's legs as well as a scratch on
9 the side of one child's face. *Id.* at 1291–92. The social worker defendant testified that she did
10 not think the children were being physically abused, but she was concerned that the children were
11 isolated from those to whom they might report abuse. *Id.* at 1292.

12 In their opposition, defendants argue that plaintiffs do not satisfy their burden of coming
13 forward with admissible evidence establishing that they are entitled to summary judgment on
14 their claim of violation of right to familial association. (Doc, No. 73 at 4–5.) In addition,
15 defendants contend that evidence as to the severity of the conditions in the home and plaintiff
16 Emmanuel becoming aggressive and punching walls just before removal of the children from the
17 home distinguish this case from *Rogers*, and qualified immunity applies. (*Id.* at 5–7.) Finally,
18 defendants argue that based upon the evidence on summary judgment they are entitled to
19 qualified immunity and plaintiffs have not submitted evidence establishing to the contrary. (*Id.* at
20 7–9.)

21 The court agrees with plaintiffs that pursuant to the holding in *Rogers*, defendants'
22 observations of feces, dirty clothes, black mold, dirty diapers, rotten food, cockroaches, a
23 bathroom out of service, bottles of alcohol on the floor of the parents' room, trash, and a rifle
24 inside the closet do not provide reasonable cause to believe the children were in imminent danger
25 of serious bodily injury within the four to six hours it might have taken to obtain a warrant
26 authorizing their removal, and no reasonable social worker could have believed otherwise. (PUF
27 ¶ 30.) These conditions are either identical to those in *Rogers* or, like those in *Rogers*, constitute
28 a "chronic, ongoing problem" that "may increase the risk of eventual illness, but there is no

7

1    indication in the record of any particular risk that the . . . children would become seriously ill
2    during the few hours that it would take . . . to obtain a warrant." *Rogers*, 487 F.3d at 1295–96.
3            However, unlike in *Rogers*, here defendants have submitted evidence that plaintiff
4    Emmanuel became aggressive and started punching walls before the decision was made to
5    remove the children. (See fn. 2, above.) The court finds it is a question of fact for the jury to
6    decide whether plaintiff Emmanuel becoming aggressive and punching walls just before removal
7    provided reasonable cause to believe that the children were in imminent danger of serious bodily
8    harm during the four to six hours it might have taken to obtain a warrant authorizing their
9    removal. *See Wallis*, 202 F.3d at 1138 ("The existence of reasonable cause, and the related
10   questions, are all questions of fact to be determined by the jury."); *Mueller v. Auker*, 576 F.3d
11   979, 992 (9th Cir. 2009) ("This set of facts and circumstances creates without doubt a classic
12   genuine issue of material fact on the central issue of whether Rogers reasonably perceived
13   imminent danger to Taige."). Within the limited record before the court in connection with the
14   pending motion, there is little to no context for how severe plaintiff Emmanuel's behavior was or
15   the degree to which it suggested risk of serious bodily harm to the children. The evidence before
16   the court on summary judgment shows only that in the past plaintiff Emmanuel had reportedly hit
17   the children (PUF ¶ 6; Doc. No. 68 at 14); just before the removal of the children from the home,
18   plaintiff Emmanuel became aggressive and started punching walls (Doc. No. 68 at 19); and as a
19   result defendant Torres stated that she "didn't feel like it was safe for [her] to stay there longer"
20   (Doc. No. 65-3 at 103). Because plaintiffs are not only the movants but also have the ultimate
21   burden to prove a lack of exigent circumstances, this ambiguity regarding the severity of the
22   incident precludes the granting of partial summary judgment in their favor. *Mueller*, 700 F.3d at
23   1193 (finding that the plaintiff has the burden to prove lack of exigent circumstances in any such
24   § 1983 action); *Jones v. Mastandrea*, No. 3:19-cv-06241-BHS-JRC, 2020 WL 7344494, at *4
25   (W.D. Wash. Oct. 5, 2020), *report and recommendation adopted,* No. 19-cv-06241-BHS-JRC,
26   2020 WL 7343019 (W.D. Wash. Dec. 14, 2020) ("Viewing the evidence in the light most
27   favorable to defendant, as the Court must, plaintiff's evidence reveals factual ambiguities
28   regarding these elements, so that judgment in plaintiff's favor is not appropriate at this time.").

In *Rogers*, where the Ninth Circuit reversed denial of the plaintiff's motion for partial summary judgment, it was crucial to the court's decision that it had before it evidence that clarified the severity of the children's medical ailments and therefore any attendant risks of delaying treatment to obtain a warrant. *Rogers*, 487 F.3d at 1297. Specifically, the court knew the state of the children ("alert and active") and the type of medical ailments ("bottle rot" and "malnutrition"). *Id.* ("One need not be a licensed physician to recognize that in the case of a child who is both alert and active neither bottle rot nor malnutrition is the type of condition that will lead to serious injury if not corrected within a matter of hours."). In contrast here, because the court does not have before it clarifying evidence regarding the severity and threatening nature of plaintiff Emmanuel's behavior, the court cannot determine attendant risks of waiting four to six hours to remove the children from the home.

Plaintiffs have failed to present evidence on summary judgment satisfying their burden of establishing that no reasonable jury could find that there was reasonable cause to believe that the children were in imminent danger of serious bodily injury. *See Gomes v. Santa Clara Cnty.*, No. 5:18-cv-04191-EJD, 2020 WL 4747901, at *8 (N.D. Cal. Aug. 17, 2020), *aff'd,* 859 F. App'x 145 (9th Cir. 2021) ("Unlike *Rogers*, the risk that Plaintiffs posed to H.G. was not stagnant."); *cf. Zeigler v. Cnty. of San Luis Obispo*, No. 23-55381, 2024 WL 3082529, at *1 (9th Cir. June 21, 2024)[3] (finding that it was lawful to remove the child from the home without a warrant where a report of worsening hitting was corroborated by an in-person visit, which revealed the child was hit that morning, and social workers could not obtain a warrant to remove the child until the next day).

Accordingly, plaintiffs' motion for partial summary judgment in their favor will be denied.

/////

/////

/////

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

9

**CONCLUSION**

For the reasons explained above,

1. Plaintiffs' motion for partial summary judgment in their favor (Doc. No. 65) is DENIED; and

2. The parties are directed to meet and confer on their availability for trial, and within fourteen (14) days of the entry of this order, to contact Courtroom Deputy Pete Buzo at (916) 930-4016 or pbuzo@caed.uscourts.gov with their multiple proposed dates for a Final Pretrial Conference and Jury Trial in this action. Upon receipt of the parties' proposals the court will issue an order scheduling those dates.

IT IS SO ORDERED.

Dated: **April 7, 2025**

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE